UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY JOSEPH SANCHEZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>LERDO KERN COUNTY DETENTION FACILITY,<br><br>　　　　Defendant. | Case No.  1:14-cv-01424-MJS (PC)<br><br>**ORDER DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM; LEAVE TO AMEND WITHIN THIRTY DAYS GRANTED**<br><br>**(ECF No. 1)** |

Plaintiff is a state prisoner proceeding pro se in this civil rights action filed on September 8, 2014 pursuant to 42 U.S.C. § 1983. Plaintiff has consented to Magistrate Judge Jurisdiction (ECF No. 4.)  Plaintiff's Complaint (ECF No. 1) is before the Court for screening.

**II.  SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious," or that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is

immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

### III.    PLEADING STANDARD

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990), quoting 42 U.S.C. § 1983. Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. See *West v. Atkins*, 487 U.S. 42, 48 (1988); *Ketchum v. Alameda Cnty.*, 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Id.* Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true,

2

legal conclusions are not. *Id.* at 667-68.

## IV.  SUMMARY OF THE COMPLAINT

Plaintiff states that he is bringing his suit on behalf of himself and 20 other inmates at the Kern County Jail who have attached their signatures to the Complaint (ECF No. 1, at 13).  Plaintiff is not specific about whom he is suing.  He alleges that he "is complaining of Policies, Practices and Procedures of the Kern County Sherriff's Office and it's [sic] Employees."

Plaintiff describes a number of allegedly unconstitutional policies at the Kern County Jail System:

1) **Group Punishment:** Jail officials have a practice of imposing group punishment on inmates.  Rather than initiate disciplinary hearings against individual inmates, officials confiscate personal property from all inmates in a housing assignment.  Group punishment has the effect of inciting inmate violence, because inmates try to impose discipline on one another to forestall imposition of a blanket punishment.

2) **Copy Services:** Jail officials require inmates to pay for copies unless they have been deemed "pro per or pro se" litigants in existing court cases.  This has the effect of preventing indigent inmates from initiating lawsuits, submitting required documentation to family court or government agencies, or sending copies of documents to their attorneys.

3) **Library Services:** Jail officials have discontinued access to the library at "Max/med, Pretrial, Minimum, and Central Receiving Facilities." Inmates may only read books that are their own personal property.

4) **Lockdown/Outdoor Recreation:** Jail officials have instituted a lockdown in

response to "racial riots." As part of the lockdown, inmates cannot use the rec yard. Thus, inmates must exercise inside, which disrupts other indoor activities during the day. Independently of the lockdown, Plaintiff complains that the condition of the rec yard does not meet the requirements of prison regulations because it is "for the most part, dirt… infested with Valley Fever spores," contains no exercise equipment or facilities, and therefore "cannot be regarded as designed for recreational purposes." (ECF No. 1, at 5). The lockdown prevents inmates from being able to contact staff about medical emergencies in a timely manner. In at least one case, this resulted in the death of an inmate, who broke his neck in a fall from his bunk and died before medical staff arrived. In addition, the lockdown causes delays when inmates return to their cells from other parts of the prison. This results in inmates with medical problems/sensitivities being left in the heat and sun outside for up to 45 minutes at a time.

5) **Dental Care:** Inmates have limited access dental care. They can only get temporary fillings and extractions, but not other procedures.

6) **Visitation:** Plaintiff alleges a number of problems with visitation policies. First, not all inmates are able to have one visit per week. Second the visits do not last one hour because officials deduct the time it takes to transport the inmate to access the visitation yard. Third, contact visits have been discontinued due to concerns about contraband. Plaintiff contends there are ways to prevent the influx of contraband, for instance, by making use of an X-Ray scanner that the jail already owns, that do not require the complete prohibition of contact visits.

4

7) **Commissary Purchases:** Plaintiff alleges there are several problems with the commissary system. First, he claims that prices are inflated that inmates do not have the option of purchasing their goods elsewhere.  Next he claims that orders are subject to an illegal $3.00 surcharge.  Initially, this was called a UPS fee on commissary invoices. After Plaintiff complained that "UPS never handled the packages," the name of the fee changed to "processing fee." Plaintiff contends that whatever the fee is called, it is illegal, and requests restitution for himself and everyone else subject to the charge.

8) **Meals:** Plaintiff complains that the meals at the jail do not contain sufficient variety, sometimes include rotted food, and that portions are too small, amounting to cruel and unusual punishment under the Eighth Amendment.

## V.   DISCUSSION

Plaintiff attempts to raise a number of state and constitutional claims on behalf of himself and other inmates.  Because a pro se litigant may not represent other individuals, Plaintiff's claims are barred as to the other inmates. Because Plaintiff has not linked his claims to particular defendants or established that he himself suffered any harm, Plaintiff fails to state a cognizable claim on his own behalf.  The Court will therefore dismiss Plaintiff's claims without prejudice, and provides relevant legal standards for guidance if he chooses to amend.

**A. Plaintiff May Not Represent Other Inmates.**

Plaintiff, proceeding pro se in this action, may not represent the interests of any other inmate(s). Simon v. Hartford Life, Inc., 546 F.3d 661, 664-65 (9th Cir. 2008); Johns v. County of San Diego, 114 F.3d 874, 876 (9th Cir. 1997); Russell v. United States, 308 F.2d 78, 79 (9th Cir. 1962) ("a litigant appearing *in propria persona* has no

5

authority to represent anyone other than himself").

The Complaint has been signed by twenty inmates in addition to Plaintiff. The Court will not permit these additional inmates to join as co-plaintiffs proceeding pro se. Courts have broad discretion regarding the permissive joinder of parties. Fed. R. Civ. P. 20, 21; see Coleman v. Quaker Oats Co., 232 F.3d 1271, 1296-97 (9th Cir. 2000); Maddox v. County of Sacramento, No. 2:06-cv-0072-GEB-EFB, 2006 WL 3201078, *2 (E.D. Cal. Nov. 6, 2006). The need for co-plaintiffs to agree upon and sign all filings becomes impossibly burdensome where, as here, the proposed co-plaintiffs are incarcerated.[1]

Plaintiff may proceed solely on his own behalf.  The other inmates are dismissed as co-plaintiffs.

**B. Section 1983 Linkage Requirement**

Under § 1983, plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Government officials may not be held liable for the actions of their subordinates under a theory of *respondeat superior*. Iqbal, 129 S.Ct. at 1948. Plaintiff must plead sufficient facts showing that the official has violated the Constitution through his or her own individual actions or omissions. Id.

Plaintiff has not named any individual defendant or explained how he or she participated in, or otherwise might be responsible for, the alleged violations. A defendant acting in a supervisory capacity is liable only if he or she "participated in or directed the violations, or knew of the violations and failed to act to prevent them."

---

[1] Inmates may not correspond with other inmates in the absence of written authorization from the warden. Cal. Code Regs., tit. 15, § 3139.

6

Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

If Plaintiff chooses to amend, he must name one or more defendants amendable to suit and demonstrate that each personally acted or failed to act violating his rights.

**C. Municipal Liability Under § 1983**

A municipality, including a county or sherriff's department, may be liable under § 1983 if a plaintiff can show that "action pursuant to official municipal policy" caused his injury. Connick v. Thompson, 131 S.Ct. 1350, 1359 (2011); Monell v. Dept. of Soc. Svcs., 436 U.S. 658, 691 (1978). To do this, a plaintiff must establish (1) he was deprived of his constitutional rights by the municipal entity and its employees acting under color of state law; (2) that the defendants have customs or policies which demonstrate a conscious or deliberate disregard for constitutional rights; and (3) that these policies were the driving force behind the deprivation of the plaintiff's rights. Gant v. Cty. of Los Angeles, 772 F.3d 608, 617 (9th Cir. 2014); Lee v. City of Los Angeles, 250 F.3d 668, 681-682 (9th Cir. 2001); see also Monell, 436 U.S. 658, 691 (1978). Customs and policies include not only written rules and codes of conduct, but also "widespread and longstanding practice that constitutes the standard operating procedure of the local government entity." Young v. City of Visalia, 687 F.Supp.2d 1141, 1147-1148 (E.D. Cal. 2009)(quoting Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996); Gillette v. Delmore, 979 F.2d 1342, 1346-1347 (9th Cir. 1992); see also Connick v., 131 S.Ct. at 1359. "A policy can be one of action or inaction." Fairley v. Luman, 281 F.3d 913, 918 (9th Cir. 2002)(citations omitted).

Where a plaintiff seeks to hold a municipal entity liable for his harm, he must show "a direct causal link between [the] municipal policy or custom and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378, 386 (1989). "Local

7

governments are only responsible for their *own* illegal acts," and "are not vicariously liable under § 1983 for their employees' actions." Connick, 131 S.Ct. at 1359 (emphasis in original)(citations omitted). Thus, a municipality can be liable for its policies even where individual defendants were found not to have inflicted constitutional harm. Fairley, 281 F.3d at 918.

Here, Plaintiff's claims regarding group punishment, copy restrictions, library use, the ancillary effects of the lockdown, limited dental care, and substandard food appear to allege that the policies of the county or the sherriff's department are causing constitutional injury. Such claims against a local government entity are, as discussed above, permissible under Monell. However, as with any § 1983 claim, Plaintiff must show that *his own* constitutional rights were violated. See, e.g., Gant, 772 F.3d at 617. He has not made any such personal injury clear in his Complaint. If Plaintiff chooses to amend these claims, he must plead facts indicating he himself suffered constitutional harm, and that particular policies and practices of the jail were directly responsible. The court provides the particular constitutional standards applicable to each potential constitutional claim below.

### 1. Group Punishment/ Confiscation of Property

Prisoners may not generally challenge the constitutionality of cell searches on Fourth Amendment grounds. While the Fourth Amendment protects prisoners from some unreasonable searches and seizures, Lopez v. Youngblood, 609 F.Supp.2d 1125, 1133 (E.D. Cal. 2009)(finding group strip searches were unreasonable), it "has no applicability to a prison cell." Hudson v. Palmer, 468 U.S. 517, 536 (1984). "An inmate has no reasonable expectation of privacy in his cell entitling him to the protection of the Fourth Amendment against unreasonable searches and seizures." Id. Moreover, any

restriction of an inmate's privacy interests is justified to the extent it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987).

A prisoner does have a protected property interest in his personal belongings such that he may be able to challenge their confiscation on due process grounds. Hudson, 468 U.S. at 532; Wolff v. McDonnell, 418 U.S. 539, 556 (1974). However, only authorized, intentional deprivations of property implicate constitutional concerns. Hudson, 468 U.S. at 532. Thus, to the extent an inmate challenges a confiscation carried out pursuant to "established state procedure, rather than random and unauthorized action," he or she is entitled to predeprivation process. Hudson, 468 U.S. at 532 (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-436 (1982)).

However, an "unauthorized, intentional deprivation of property by a governmental employee" does not violate procedural due process "if a meaningful post-deprivation remedy for the loss is available." Hudson, 468 U.S. at 533; Barnett v. Centoni, 31 F.3d 813, 816-817 (9th Cir. 1994). The Ninth Circuit has found that California's post-deprivation remedy is adequate. Blueford v. Prunty, 108 F.3d 251, 256 (9th Cir. 1997); Barnett, 31 F.3d at 816-817. Where a plaintiff seeks damages for the alleged negligent or wrongful conduct of a state employee, he may file suit in state court under the California Tort Claims Act. CAL. GOV'T. CODE §§ 810 *et seq.*; Barnett, 31 F.3d at 816-817. The Act requires plaintiffs suing "for money or damages" to first present their claims to the Victim Compensation and Government Claims Board. CAL. GOV'T. CODE § 945.4.[2] In other words, unless Plaintiff can establish that the confiscations of

---

[2] Claim presentation may not be required, however, for plaintiffs whose "property [was] lost and cannot be returned due to the government's own negligence" and who only seek "specific recovery of his personal property or its value." Escamilla v. CDCR, 141 Cal. App. 4th 498, 509-513 (Cal. Ct. App. 2006)(prisoner whose personal effects had been discarded by prison staff was not required to present claim, even though he would be recovering value of possessions, not possessions themselves); accord City of Stockton v. Super. Ct., 171 P.3d 20, 28-29 (Cal. 2007); Holt v. Kelly, 574 P.2d 441, 444 (Cal. 1978);

his property were carried out pursuant to an established procedure, Plaintiff will probably have to challenge them at the state, not federal, level.

### 2. Library/Copy Restrictions

An inmate does not have an "abstract, freestanding right to a law library or legal assistance." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010)(citing Lewis v. Casey, 4518 U.S. 343, 351 (1996)). However, he may establish that prison officials unconstitutionally denied him access to the courts if he can "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." Hebbe, 627 F.3d at 342; see also Keenan v. Hall, 83 F.3d 1083, 1094 (9th Cir. 1996)(plaintiff must demonstrate actual injury to show that copy services denied his access to the courts). Prisons have significant latitude in restricting inmates' access to reading materials *not* related to legal research, provided the restrictions are justified by a legitimate penological interest. Beard v. Banks, 548 U.S. 521, 530-533 (2006)(applying Turner factors to conclude that a complete ban on magazines, newspapers, and photographs for high-security inmate was constitutional).

### 3. Lockdown

The deprivations caused by an extended lockdown, including prohibitions on outdoor exercise, can become sufficiently severe to constitute an Eighth Amendment violation. See, e.g., Thomas v. Ponder, 611 F.3d 1144, 1146 (9th Cir. 2010)(health risk posed by long-term denial of outdoor exercise is obvious and may rise to the level of a constitutional violation); Hayward v. Procunier, 629 F.2d 599, 603 (9th Cir. 1980)(denial of exercise even in state of emergency can be unconstitutional); Mitchell v. Felker, No.

---

Minsky v. City of Los Angeles, 520 P.2d 726, 733 n. 14 (Cal. 1974). This latter category of plaintiffs can seek redress directly by filing a petition for a writ of mandamus. See Escamilla, 141 Cal. App. 4th at 511-512.

2: 08-cv-1196 2012 WL 2521827, at *4-*6 (E.D. Cal. June 28, 2012)(Plaintiffs' Eighth and Fourteenth Amendment claims based on lockdowns survived Motion to Dismiss). However, a prisoner's right to outdoor exercise is not "absolute and indefeasible." Norwood v. Vance, 591 F.3d 1062, 1068 (9th Cir. 2009). Where a facility has "substantial reasons for imposing lockdowns" and there is no indication that "the lockdowns were meant to be punitive or were otherwise implemented in bad faith," defendants may constitutionally limit access to outdoor exercise in an effort to restore order and protect inmate safety. Id., at 1069.

To establish that a lockdown created conditions of confinement that violated the Eight Amendment, the prisoner must establish first, that he was deprived of the "minimal civilized measure of life's necessities," and second, that defendants acted with deliberate indifference to his health and safety. Farmer v. Brennan, 511 U.S. 825, 834-835 (1994). "Although exercise is one of the basic human necessities protected by the Eighth Amendment, a temporary denial of outdoor exercise with no medical effects is not a substantial deprivation." May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997). A finding that the purpose of the lockdown was to "prevent further attacks, injuries, and homicides" will generally defeat an argument that prison officials acted with deliberate indifference. See Norwood v. Woodford, 661 F.Supp. 2d 1148, at 1157 (S.D. Cal. 2007).

### 4. Dental Care

The Eighth Amendment of the United States Constitution entitles prisoners to medical and dental care, and a prison official violates the Amendment when he acts with deliberate indifference to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104(1976); Peralta v. Dillard, 744 F.3d 1076, 1081 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096

(9th Cir. 2006).  "A medical need is serious if failure to treat it will result in significant injury or the unnecessary and wanton infliction of pain." Peralta, 744 F.3d at 1081 (citing Jett, 439 F.3d at 1096). Examples of a serious medical need include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014).

A medical provider shows deliberate indifference to such a need if he "knows of and disregards an excessive risk to inmate health." Peralta, 744 F.3d at 1082 (citing Farmer, 511 U.S. at 837. This "requires more than ordinary lack of due care." Colwell, 763 F.3d at 1066 (citing Farmer, 511 U.S. at 835).  Instead, the provider must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Colwell, 763 F.3d at 1066.  Prison medical providers may demonstrate deliberate indifference when they "deny, delay, or intentionally interfere with medical treatment," or provide substandard care. Id.

Many California correctional facilities are not adequately staffed with dentists or hygenists. See Peralta, 744 F.3d at 1082 (noting shortage of dental staff at Lancaster State Prison).  Such staff shortages alone do not automatically establish deliberate indifference, particularly where an inmate is suing an individual provider. Id., at 1084. ("a prison medical official who fails to provide needed treatment because he lacks the necessary resources can hardly be said to have intended to punish the inmate.") However, "chronic shortage of resources may well amount to a policy or practice for which monetary relief may be available under Monell," discussed *supra.* Id., at 1084.

### 5. Visitation

Inmates do not have a clearly established constitutional right to receive visits, in particular contact visits. Dunn v. Castro, 621 F.3d 1196, 1202 (9th Cir. 2010); Toussaint v. McCarthy, 801 F.2d 1080, 1114 (9th Cir. 1986)("To the extent that denial of contact visitation is restrictive and even harsh, it is part of the penalty that criminals pay for their offenses against society").  The Supreme Court has upheld a variety of restrictions on visitation (including denials of contact visitation, as well as limitations on the people allowed to visit an inmate) against First, Eighth, and Fourteenth Amendment challenges. Overton v. Bazzetta, 539 U.S. 126, 133 (2003).

### 6. Commissary Prices

Inflated commissary prices do not provide a basis for a constitutional claim because there is no constitutional right to purchase items from the canteen. See Keenan, 83 F.3d at 1092; Dushane v. Sacramento Cty. Jail, No. 2:13-cv-2518 2014 WL 3867468, at *6 (E.D. Cal. August 6, 2014); Thomas v. Madera Ct. Dept. of Corrections, No. 1:06-cv-00649 2010 WL 1444536, at *3 (E.D. Cal. April 9, 2010)(inmate's complaint about purchasing noodles at inflated price was "frivolous").

### 7. Food Quality

While the Eighth Amendment requires jail officials to provide inmates with nutritionally adequate meals, Foster v. Runnels, 554 F.3d 807, 812-813 (9th Cir. 2009), it does not require that the food be tasty, varied, or aesthetically pleasing. See LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993).  For an inmate's complaints about his diet to rise to the level of a constitutional deprivation, the plaintiff must show that the food he received was not adequate to maintain his health, e.g. by alleging facts indicating he lost weight or incurred health problems. See Foster, 554 F.3d at 813 n.2; LeMaire, 12

F.3d at 1456; Stewart v. Block, 938 F.Supp. 582, 588 (C.D. Cal. 1996).  In addition, the inmate must show that the responsible prison officials had a "sufficiently culpable state of mind," and were deliberately indifferent to the inmate's health and safety.  Farmer, 511 U.S. at 834.

**D.  State Claims**

In addition to his constitutional claims, Plaintiff alleges that some of the jail's policies, including the restrictions on visitation, the condition of the recreational facilities, the imposition of processing fees at the commissary, and the quality of the food violated state law and prison regulations.  The court declines to address these state claims for several reasons.  First, as with his constitutional claims, Plaintiff has not indicated that he himself was injured by these policies.  Second, he has not alleged compliance with the California Tort Claims Act a prerequisite to filing suit.

Under the California Tort Claims Act ("CTCA"), Plaintiff may not maintain an action for damages against a public employee unless he has presented a written claim to the state Victim Compensation and Government Claims Board. Cal. Gov't Code §§ 905, 911.2(a), 945.4 & 950.2; Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). Failure to demonstrate such compliance constitutes a failure to state a cause of action and will result in the dismissal of state law claims. State of California v. Superior Court (Bodde), 32 Cal.4th 1234, 1240 (2004).

Third, the Court will not exercise supplemental jurisdiction over a state law claim absent a cognizable federal claim. 28 U.S.C. § 1367(a); Herman Family Revocable Trust v. Teddy Bear, 254 F.3d 802, 805 (9th Cir.2001); see also Gini v. Las Vegas Metro. Police Dep't, 40 F.3d 1041, 1046 (9th Cir.1994). "When . . . the court dismisses the federal claim leaving only state claims for resolution, the court should decline

jurisdiction over the state claims and dismiss them without prejudice." Les Shockley Racing v. Nat'l Hot Rod Ass'n, 884 F.2d 504, 509 (9th Cir. 1989).

The court will reexamine the issue of supplemental jurisdiction should plaintiff amend his complaint to include federal claims.

## VI.     CONCLUSION AND ORDER

Plaintiff's Complaint fails to state any cognizable claim.

The Court grants Plaintiff the opportunity to correct the deficiencies analyzed above in an amended complaint. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  If Plaintiff amends, he may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaint).

An amended complaint would supersede the prior complaint. Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 f.2d 565, 567 (9th Cir. 1987). Thus, it must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's signed first amended complaint (ECF No. 1) is DISMISSED for failure to state a claim upon which relief may be granted,

2. The Clerk's Office shall send Plaintiff (1) a blank civil rights amended complaint form and (2) a copy of his complaint filed September 8, 2014,

3. Plaintiff shall file an amended complaint within thirty (30) days from service of this order, and

4. If Plaintiff fails to comply with this order, the Court will recommend that this action be dismissed, without prejudice, for failure to obey a court order.

IT IS SO ORDERED.

Dated:   March 20, 2015            /s/ *Michael J. Seng*
                                   UNITED STATES MAGISTRATE JUDGE